UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWIN JONES, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:19-cv-01122-AKK** |
| CITY OF BIRMINGHAM, ET AL., ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Edwin Jones, Curtis Coleman, and Norman Adams, employees of the City of Birmingham Police Department (BPD), bring this action against the City, Mayor Randall Woodfin, Police Chief Patrick Smith, and the City's Director of Human Resources Department Jill Madajczyk in their official capacities. *See* doc. 10. Plaintiffs allege claims for race discrimination and disparate treatment pursuant to 42 U.S.C. §§ 1981 and 1983, as well as claims for Fourteenth Amendment due process violations. *Id*. The Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* docs. 11, 12. The motion is fully briefed, docs. 14, 15, and 16, and ripe for review. In light of Plaintiffs' failure to adequately plead valid claims, the motion is due to be granted.

**I.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Officer Edwin Jones, Sergeant Curtis Coleman, and Sergeant Norman Adams, who are all African American, doc. 10 at 4, were denied promotions to the next level in the BPD ranks despite meeting eligibility requirements. Doc. 1-1 at 29, 40-41. They claim the denial violated various laws.

### A. BPD Promotion Policies and Procedures

Plaintiffs allege Defendants are subject to the Enabling Act and the Personnel Board of Jefferson County (PBJC) Rules and Regulations, *see* doc. 10, which detail in relevant part the promotional procedures for the BPD. Under these rules, when attempting to fill a vacancy, the Appointing Authority—identified by Plaintiffs as BPD, *id.* at 5—submits a Requisition for Certification to the Director,[2] who then selects eligible candidates for certification. *Id.* at 7. The Director prioritizes the candidates by their rank, which is determined by final scores in promotional examinations and interviews as well as attributes such as seniority and veteran status. Doc. 1-1 at 16-17. The Director uses the "Rule of Ten Ranks" to construct the list: for the first vacancy, the PBJC certifies ten candidates, adding an additional

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citations and quotation marks omitted). As such, the facts are taken from the First Amended Complaint, doc. 10, and its exhibits, docs. 1-1 and 1-2, minus legal conclusions that are unsupported by factual allegations and are not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 662.

[2] A review of the full PBJC Rules and Regulations reveals that "Director" refers to the Director of the PBJC, who is not a party in this case. Rule 1.3, Rules and Regulations of the Personnel Board of Jefferson County (2018), https://www.pbjcal.org/documents/rules/2018_Rules_Regs.pdf

candidate for each additional vacancy. *Id.* at 16. The Appointing Authority "shall appoint one of those whose names are certified" within ten days of the certification. *Id.* at 19. If the Appointing Authority fails to appoint candidates within thirty days and the Director does not give an extension, the certificate of eligibles expires. *Id.*

### B. 2019 Promotion Cycles

Plaintiffs allege the following discrepancies between the promotional policies and the 2019 promotional processes that stem from the 2019 City of Birmingham Structured Interview Guides provided to candidates for Lieutenant and Sergeant positions. *Id.* at 8, 11. The Guides were designed to "help explain what to expect on the . . . [relevant] test." *Id.* at 12. The Plaintiffs maintain the Guides contained internal contradictions, using the words "test" and "interview" interchangeably, *id.* at 13, and counseling on one page to "dress[] comfortably," doc. 1-2 at 12, 29, while warning two pages later that "[c]andidates must wear business attire for the Test . . . [and that] [c]andidates who are not dressed in the required attire <u>will not</u> be admitted to the final test site," *id.* at 14, 31 (emphasis in original). In addition to the purported contradictions, on the day of the promotion test, candidates did not receive the preparation period or the test preparation guide that the Structured Interview Guides had promised. Doc. 10 at 13. And, despite the Guides' language barring inappropriately dressed candidates from entering the testing site, a Caucasian Lieutenant candidate wearing improper dress was admitted to the test site, albeit he

4

was later disqualified for his inappropriate attire. *Id.* The BPD also allowed another Caucasian candidate for the Lieutenant position to interview via video conferencing, and subsequently promoted her. *Id.* at 15. Finally, none of the promotions occurred within the thirty-day timeframe. *Id*. at 11.

### i. Lieutenant Promotion Cycle

Specific to the Plaintiffs, in March 2019, Plaintiffs Adams and Coleman received notice that the PBJC had included their names on its certification list for promotion to Lieutenant, the next level after Sergeant. *Id.* at 8. Two weeks later, the BPD released an alphabetical interview list consisting of twenty-five candidates, sixteen of whom were African American, deemed eligible for promotion. Doc. 1-1 at 25, 27. In May 2019, Chief Smith emailed BPD personnel with a "rough guesstimate[]" that the Department would promote eight candidates to Lieutenant. *Id*. at 31. Ultimately, the City promoted eleven candidates to Lieutenant, four African Americans and seven Caucasians. *Id*. at 27, 29.

### ii. Sergeant Promotion Cycle

In April 2019, the BPD released an alphabetical Sergeant promotions interview list. *Id*. at 34-35. Among the list of forty-nine candidates, thirty-one were African American, including Plaintiff Jones. *Id.* at 37-38. Of the thirty-two candidates ultimately promoted to Sergeant, *id*. at 40-41, nineteen were African American and thirteen were Caucasian, *id*. at 37-38.

## III. ANALYSIS

Plaintiffs allege claims against all defendants under §§ 1981 (Counts I and II) and 1983 (Counts III and IV), as well as under the Fourteenth Amendment due process clause (Count V). *See* doc. 10. However, § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735 (1989). Consequently, the § 1981 claims for racial discrimination (Count I) and disparate treatment (Count II) merge into Plaintiffs' identical § 1983 claims (Counts III and IV),[3] and the motion to dismiss these two counts is due to be granted.

As for Count V, employment rights are state-created property rights, falling under the ambit of procedural due process. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994). However, a "prospective promotion is not a property or liberty interest protected by the [F]ourteenth [A]mendment." *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988). As such, the due process claims (Count V) are also due to be dismissed for failure to state a claim.

Turning now to the remaining claims under § 1983, Counts III and IV, the court notes that § 1983 creates no substantive rights, but instead provides remedies

---

[3] *See, e.g., Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 906 n.1 (11th Cir. 2001) (declining to address § 1981 claim and holding that any relief available under § 1981 was duplicative of that available under § 1983).

for violations of federal statutory and constitutional rights. *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 (11th Cir. 2002). In Plaintiffs' case, the alleged statutory violation is § 1981 of the Civil Rights Act of 1866, as amended. The court will consider Plaintiffs' § 1983 claims against the City of Birmingham (Section A) and Mayor Woodfin, Chief Smith, and Director Madajczyk (Section B) before turning to the merits of the race discrimination claims (Section C).

### A. Claims against the City of Birmingham

Plaintiffs plead claims under § 1983 against the City for racial discrimination and disparate treatment. *See* doc. 10. A municipality cannot be held vicariously liable for its employee's unconstitutional conduct under the theory of respondeat superior. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). Liability attaches instead under § 1983 only when "execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. As a result, a plaintiff making claims against a city for the conduct of its employees must establish the employees acted pursuant to a city policy or custom. *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). Whereas a custom is "a practice that is so settled and permanent that it takes on the force of law," a policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). The plaintiff may make § 1983 claims against a city by

7

pleading specific facts that "identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through repeated acts of a final policy maker for the [city]." *Grech v. Clayton County,* 335 F.3d 1326, 1329 (11th Cir. 2003).

A review of the Complaint shows that Plaintiffs plead no facts alleging that the City promulgated an official policy of discrimination,[4] or that the City or its employees had a custom or practice of racial discrimination in hiring or promotions. *See generally* doc. 10. Plaintiffs contend primarily that during a single cycle of promotions this year, the City failed to follow its written policies related to the process and promoted Caucasian candidates at a higher rate than African Americans. *See id.* Such isolated incidents are "insufficient to establish a custom." *Denno v. Sch. Bd. Of Volusia Cty., Fla.*, 218 F.3d 1267, 1277 (11th Cir. 2000).[5] Because Plaintiffs fail to sufficiently allege an express policy of racial discrimination or a custom of such acts, they cannot survive the City's motion to dismiss through either of these two theories of municipal liability under § 1983.[6]

---

[4] Plaintiffs note multiple times that Defendants "have not been forthcoming" with information related to the promotional selection process, docs. 10 at 4, 5; 14 at 10, but this lack of knowledge does not excuse their failure to allege sufficient facts to make a plausible claim. *Iqbal*, 556 U.S. at 678-79 (holding Fed. R. Civ. Pro. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

[5] *See also, e.g., Summers v. City of Dothan, Ala.*, 757 F. Supp. 2d 1184, 1200 (M.D. Ala. 2010), *aff'd*, 44 F. App'x 346 (11th Cir. 2011) (dismissing § 1983 claims against a city where plaintiff argued the city failed to follow its policies during her termination).

[6] The final policymaker path to municipal liability, which neither side briefed, *see* docs. 11; 12; 14; 15; and 16, instructs that liability may attach when "the municipality has officially sanctioned or ordered" the challenged acts. *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1167 (11th Cir.

### B. Claims against Mayor Randall Woodfin, Police Chief Patrick Smith, and Jill Madajczyk

It is unclear whether Plaintiffs plead their § 1983 claims against the individual defendants directly or under a theory of supervisory liability. To the extent Plaintiffs are suing these defendants directly, "because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly[.]" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citations omitted). However, claims against government officials in their official capacities for prospective injunctive or declaratory relief for ongoing constitutional violations are not barred by the Eleventh Amendment. *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Rather, litigants may sue

---

2013). These officially sanctioned acts include "the acts of policy-making officials." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). Whether a municipal employee has final policymaking authority for a city is a question of state law. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). Under certain circumstances, cities may be liable for a policy deriving from "a single decision by municipal policymakers." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1190 (11th Cir. 2019). But, "a municipal employee does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Id.* (citations and quotation marks omitted). Generally, the final policymaking authority theory of municipal liability is an evidentiary standard that is more appropriate for detailed review at the summary judgment stage. *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016). But to survive a motion to dismiss on this theory, the plaintiff must "allege a policy, practice, or custom of the City" leading to the complained of conduct. *Id.* As discussed above, Plaintiffs fail to make these allegations, and do not plausibly allege that the individual defendants had final policymaking authority over their promotion cycle. *See generally* doc. 10. Therefore, the Plaintiffs fail to state claims of § 1983 liability against the City under any of the avenues available to them.

state officers who have "some responsibility to enforce the statute or provision at issue." *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999). But, to pursue this theory, the litigant must allege that the state actor defendants are capable of granting the requested injunctive and declaratory relief.[7]

Plaintiffs argue in their response that "Woodfin, Smith, and Madajczyk in their official capacities are the municipal employees responsible for ensuring that the City['s] . . . promotional policies adhere to the rules of both the Personnel Board. . . and the Enabling Act [but they] did not follow the rules . . . ." Doc. 14 at 5. Apparently, Plaintiffs take issue with the individual defendants' purported failure to properly enforce what Plaintiffs view as appropriate and constitutional promotional policies. *Id*. But, the court's review is limited to the four corners of the pleadings,[8] and Plaintiffs may not amend their pleadings through their briefs.[9] Moreover, under the precedent Plaintiffs cite, the *Ex Parte Young* exception applies "only if a state officer has the authority to enforce the unconstitutional act in the name of the state." *Summit Medical Assocs.*, 180 F.3d at 1341.[10] These acts generally involve

---

[7] *See Ingram v. Buford City Sch. Dist.*, 2018 WL 7079179 at *6-7 (N.D. Ga. Dec. 17, 2018) (dismissing official capacity claims where plaintiff failed to plead defendants could grant the injunctive relief she sought); *see also Murray v. Birmingham Board of Education*, 2013 WL 5923725 at *1-2 (N.D. Ala. Oct. 31, 2013) (finding plaintiff could not bring claims against defendants who lacked the power to provide relief).
[8] *See Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013).
[9] *See James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015)**.**
[10] *See also Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (identifying as the correct inquiry whether the state official had responsible for "enforcing [an] allegedly unconstitutional scheme") (citations and quotation marks omitted).

purportedly unconstitutional statutes,[11] but may include any conduct that runs afoul of "minimum constitutional standards." *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988). Here, however, Plaintiffs do not allege that the provisions they claim Woodfin, Smith, and Madajczyk failed to enforce were constitutionally mandated. *See generally* doc. 10. Therefore, they do not state a plausible claim that can survive the Eleventh Amendment bar to their official capacity claims.

Alternatively, dismissal of the official capacity claims is warranted due to the failure to allege sufficient facts to show that either (1) Woodfin, Smith, or Madajczyk committed an ongoing constitutional violation, or (2) they incurred supervisory liability for the ongoing constitutional violations of their subordinates. To survive the motion to dismiss, Plaintiffs need to show the individual defendants either (1) had the authority to enforce an unconstitutional policy and did so, or (2) incurred liability for their subordinates' enforcement of an unconstitutional policy. In the first scenario, Plaintiffs fail to allege sufficient facts to establish that the individual defendants had the authority to enforce the policies the Plaintiffs describe. Although Plaintiffs state in their caption that they are bringing their claims against Woodfin, Smith, and Madajczyk in their official capacities, *id.* at 1, Plaintiffs do not elaborate

---

[11] *See, e.g., Summit*, 180 F.3d at 1341 (plaintiffs challenging a partial-birth abortion statute by suing state Attorney General and District Attorney); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416-17 (6th Cir. 1996) (suit against state attorney general and prosecutors challenging statute exempting religious healthcare organizations); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (suit against state governor for purportedly unconstitutional state statute).

on how these defendants violated their rights. In fact, after a brief description of the parties, *id*. at 2-3, Plaintiffs never again mention these three defendants, except to note that Chief Smith sent an email announcing he expected to make eight promotions to Lieutenant, *id*. at 10. And Plaintiffs make no specific allegations of wrongdoing by these defendants. *See generally id.*

In an attempt to overcome this pleading deficiency, Plaintiffs assert in their response that Woodfin, Smith, and Madajczyk "are the municipal employees responsible for the selection of which officers are selected for promotion," citing to ¶50 of their First Amended Complaint, doc. 10. Doc. 14 at 5. However, this citation is misleading, as the Complaint alleges only that "the City . . . Human Resources Department conducted a mandatory orientation meeting and . . . issued each promotional candidate one of three . . . Interview Information Guides." Doc. 10 at 11. Contrary to Plaintiffs' contention in their brief, the Complaint never alleges that any of the individual defendants had direct responsibility for promotional decisions or that they failed to enforce policies in a discriminatory manner. *See generally id.* Instead, Plaintiffs recount parts of the PBJC Rules and Regulations that make no specific reference to any of the individual defendants, describing instead the responsibilities of "the Director" and an "Appointing Authority." Put simply, Plaintiffs have failed to plead facts showing that the individual defendants committed an ongoing constitutional violation.

Next, to the extent Plaintiffs are suing Woodfin, Smith, and Madajczyk under a supervisor liability theory, supervisors cannot be held vicariously liable for the constitutional violations of their subordinates.[12] Rather, supervisory liability arises only when the plaintiff alleges the supervisor "personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013). To establish this causal connection, the plaintiff must meet an "extremely rigorous" standard by alleging one of the following: (1) that the supervisor failed to correct the alleged deprivation despite having notice of the need for such a correction based on "a history of widespread abuse," (2) that the supervisor's "custom or policy result[ed] in deliberate indifference to constitutional rights," (3) facts supporting "an inference that the supervisor directed the subordinates to act unlawfully" or (4) facts supporting an inference that the supervisor failed to stop such actions despite knowing they would result. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted). There is nothing in the Complaint indicating who specifically failed to enforce the PBJC policies or that those actors were under the supervision of Mayor Woodfin, Chief Smith, or Director Madajczyk. *See generally* doc. 10. And there is no

---

[12] *See Piazza v. Jefferson County, Alabama*, 923 F.3d 947, 957 (11th Cir. 2019); *Hayes v. Sec'y, Fla. Dep't of Children and Families*, 563 F. App'x 701, 704 (11th Cir. 2014) (granting summary judgment for defendant where plaintiff failed to allege supervisory liability in *Ex Parte Young* enforcement case).

13

allegation that these defendants personally participated in or were in any way causally linked to the lack of enforcement. *Id.* Consequently, the official capacity claims also fail under a supervisory liability theory.

To close, because Plaintiffs do not allege sufficient facts to assert Mayor Woodfin, Chief Smith, or Director Madajczyk had the responsibility to enforce constitutionally mandated policies and failed to do so, Plaintiffs' official capacity claims are redundant and due to be dismissed.

### C. Section 1981 Claim Pursuant to § 1983

Even if Plaintiffs could state claims under § 1983 against any of the defendants, Plaintiffs do not plausibly state a § 1981 claim for disparate treatment. While employment discrimination plaintiffs are not required to establish a prima facie case to survive a motion to dismiss,[13] they still must plausibly allege a discrimination claim.[14] Here, however, Plaintiffs plead no specific facts to indicate that racial animus factored into the BPD's promotion decision. *See generally* doc. 10. Plaintiffs allege only that the BPD promoted Caucasian candidates to both the Lieutenant and Sergeant positions at higher rates than African American

---

[13] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002).
[14] *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010); *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (holding plaintiffs claiming race discrimination under § 1981 "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss, but . . . the more stringent pleading standard established in Iqbal and Twombly applies").

14

candidates,[15] and they describe two instances in which the BPD deviated from the Structured Interview Guides for Caucasian candidates, doc. 10 at 13, 15. While the raw numbers of the promotions show a disproportionate outcome between Caucasian and African American candidates, Plaintiffs allege nothing to indicate that this outcome was the result of intentional discrimination. *See generally* doc. 10. For example, Plaintiffs plead no facts regarding where they individually or the other the African American candidates ranked on the certificate of eligibles in comparison to the successful Caucasian candidates or whether these rankings were a fair representation of test scores, interview performance, and seniority or veteran status, *see generally* doc. 10. As the Eleventh Circuit has repeatedly noted, statistical evidence alone has no probative value in establishing disparate treatment under § 1981. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). While such evidence might *help* show racial animus, "data without an analytical foundation . . . are virtually meaningless." *Martin v. Shelby County Board of Education*, 756 F. App'x 920, 924 (11th Cir. 2018) (citing *Brown v. American Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991)) (quotation marks omitted). Plaintiffs' bald assertions of disproportionate promotion rates, without more, are insufficient to state a claim

---

[15] Caucasian candidates for Lieutenant were promoted at a rate of 77%, whereas African American candidates were promoted at a rate of 25%. Doc. 1-1 at 27. Caucasian candidates for Sergeant were promoted at a rate of 72%, while African American candidates were promoted at a rate of 61%. *Id*. at 37-38.

of disparate treatment. [16]

Plaintiffs' allegations regarding the BPD's deviations from the Guides also state no plausible claim of intentional discrimination. Plaintiffs do not allege that racial bias factored into the BPD's decision to allow the one Caucasian Lieutenant candidate to enter the test site wearing inappropriate attire, *id.* at 13, and the other to conduct her interview through video conference, *id.* at 15, or that the BPD denied African Americans similar accommodations. *See generally id.* In fact, it is unclear that these anecdotes even suggest accommodations. Despite the Plaintiffs' characterization of the Structured Interview Guides as "polic[ies]" that the BPD "violated," *see id.* at 13, the Guides' "purported purpose is to help explain what to expect on the . . . test," *id.* at 12. And, while the BPD allowed the improperly dressed Caucasian candidate inside the test site, the BPD subsequently disqualified him for his inappropriate dress. *Id.* at 13. Similarly, the Guides' description of security measures merely contemplates requirements for physical interviews—they do not foreclose the possibility of remote interviews or, as was the case here, by video conferencing. *See* doc. 1-2 at 14-16. Finally, Plaintiffs do not allege that their other grievances—that the Guides were internally inconsistent, doc. 10 at 12, and vague, *id.* at 13, and that the BPD did not make the promotions with the thirty-day

---

[16] Though the precedent underpinning this analysis concerned Title VII claims, the same principles apply to the Plaintiffs' § 1981 claims. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 n.5 (explaining both Title VII and § 1981 "have the same requirements of proof and use the same analytical framework") (citations and quotation marks omitted).

timeframe mandated by the PBJC Rules and regulations, *id.* at 11—affected African American candidates differently than Caucasian candidates. *See generally id.*

Ultimately, the question before the court is not whether the BPD perfectly complied with its own policies, but rather whether Plaintiffs have plead sufficient facts to show that it engaged in discriminatory animus toward the Plaintiffs as to the promotion selection decisions.[17] Because Plaintiffs fail to plausibly allege intentional discrimination and cite only statistics and deviations from the policies, their § 1981 claims are due to be dismissed.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Defendants' respective Motions to Dismiss, docs. 11; 12, are **GRANTED**. Plaintiffs' First Amended Complaint, doc. 10, is **DISMISSED WITHOUT PREJUDICE**. Accordingly, Plaintiffs' Emergency Motion for a Temporary Restraining Order, doc. 2, is **MOOT**. The clerk is **DIRECTED** to close the file.

**DONE** the 5th day of December, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[17] *Compare Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (holding the defendant employer's failure to follow its own personnel policies, without evidence of discriminatory animus, did not establish discrimination).